TOLLEFSEN LAW PLLC
John J. Tollefsen, WSBA #13214
18225 8th Place West
Lynnwood WA 98037-4901
Phone/Fax: 425-673-0300
Email: john@tollefsenlaw.com
*Attorney for Plaintiff PETROMED CORPORATION*

US DISTRICT COURT WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PETROMED CORPORATION, *Plaintiff*, vs. BONTAN CORPORATION INC., a Ontario Corporation, HOWARD COOPER, an individual; and THREE CROWN CORPORATION, LTD, a Cayman Islands Corporation. *Defendants*. | Case no. ___ COMPLAINT FOR FEDERAL SECURITIES FRAUD, SECTION 29(B) CLAIM, STATE SECURITIES FRAUD, COMMON LAW RESCISSION, FRAUD IN THE INDUCEMENT, MONEY LAUNDERING, BREACH OF CONTRACT, ECONOMIC DURESS/BUSINESS COMPULSION, CONSUMER PROTECTION, DECLARATORY JUDGMENT AND NEGLIGENT MISREPRESENTATION |

Plaintiff PetroMed Corporation alleges:

## I.  SUMMARY OF THE CASE

1. Plaintiff's business is the exploration and development of oil and gas properties offshore Israel. As part of its plan to finance exploration and development, Plaintiff entered into an agreement with Defendants to transfer certain licenses and a

**PetroMed v. Bontan Complaint**
*(Page 1 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood, WA 98037-4901
Phone/Fax: 425 673 0300

TOLLEFSENLAW

permit which required immediate proof of financial capacity for renewal. Based on Defendants assurances that they had the necessary financing in place, Plaintiff consummated the agreement with them. The consideration was part cash and part stock issued by Bontan Corporation which is a foreign public issuer under the Securities Act of 1934 and subject to the Act's reporting requirements. After closing, Plaintiff PetroMed learned that Defendants had not secured financing, had misrepresented certain facts, and had failed to disclose all material facts. Plaintiff seeks rescission and damages.

## II. PARTIES

2. At all times relevant hereto, Plaintiff PetroMed Corporation ("PetroMed" or "the Company") is and has operated as a Belize Corporation with a principal business at No. 35 New Road, P. O. Box 1708, Belize City, Belize.

3. At all times relevant hereto, Defendant International Three Crown Petroleum, LLC ("Three Crown") is and has operated as a Colorado limited liability company with principal place of business located at 1825 Huckleberry Lane, Steamboat Springs, CO 80487 and principal mailing address of P.O. Box 774327, Steamboat Springs, CO 80477.

4. On information and belief, at all times relevant hereto, Defendant H. Howard Cooper was the manager and a member of Defendant Three Crown and a citizen of the State of Colorado with a mailing address of P.O. Box 774327, Steamboat Springs, CO 80477. Plaintiffs base this allegation on statements made by Mr. Cooper and the fact that he acted for the Three Crown. Plaintiffs have dealt with no other person of authority representing Three Crown. Mr. Cooper signed the contract with Plaintiff on behalf of Three Crown with an express representation of authority to



1  obligate Three Crown.

2      5. At all times relevant hereto, Defendant Bontan Corporation Inc. was operating is and has operated as an Ontario corporation incorporated under the laws of the Province of Ontario, Canada, with its principal executive offices located at 47 Avenue Road, Suite 200, Toronto, ONT M5R 2G3, Canada.

### III. JURISDICTION AND VENUE

    6. This action arises under the Securities Exchange Act of 1934 ("Exchange Act"), SEC Rule lOb-5 [17 CFR § 270.10b-5 (2004)], and the laws of the State of Washington and, therefore, this Court has subject matter jurisdiction.

    7. This Court's jurisdiction is properly invoked under 28 US.C. §§ l331 (federal question), 1332 (diversity of citizenship and amount in controversy), l337 (district court has jurisdiction in commerce cases) and l367 (pendant jurisdiction), the Securities Exchange Act of 1934, and the doctrine of pendent jurisdiction.

    8. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § l332.

    9. Bontan Corporation ("Bontan") is subject to the personal jurisdiction and subject matter jurisdiction of this Court under Fed. R. Civ. P. Rule 4(e) under the nationwide service of process provisions in Section 26 and 27 of 15 U.S.C. § 78aa, because Bontan has made a 20(f) filing with the Securities and Exchange Commission and conducted business in Washington State with the aid of a Minnesota attorney, who engaged in telephone negotiations with PetroMed.

    10. Cooper and Three Crown are subject to personal jurisdiction under Washington's long-arm statute, RCW 4.28.185, because Cooper, an agent of Three Crown, availed himself of the economic benefits of Washington State by entering

**PetroMed v. Bontan Complaint**
*(Page 3 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood, WA 98037-4901
Phone/Fax: 425 673 0300
TOLLEFSENLAW

1  Washington State to negotiate engage in a multi-million dollar business transaction In
2  Washington. After two days of negotiations in Bellevue, Washington the initial contract
3  between Three Crown and PetroMed in October 2009.

4  11.  Venue is properly exercised over Cooper, Three Crown, and Bontan
5  because Lyle Durham, a director of PetroMed Corporation lives in Issaquah,
6  Washington and participated in the negotiations on behalf of PetroMed.

### IV.  FACTS ENTITLING PLAINTIFF TO RELIEF

12.  On July 15, 2008, the Israeli Ministry of National Infrastructure ("Ministry") granted PetroMed two (2) offshore drilling licenses, the "Mira" and "Sarah" licenses. On August 6, 2008, the Board granted PetroMed and one (1) exploration permit, the "Benjamin" permit. The "Mira" and "Sarah" licenses are four (4) year licenses which can be renewed yearly for an additional three (3) years.

13.  As a requirement of its working plan for the "Mira" and "Sarah" licenses, PetroMed is required to perform 2D seismic studies of the license areas in preparation for oil drilling.

14.  Prior to the contract with Defendants executed on November 18, 2009, PetroMed owned 95.5% of the "Mira" and "Sarah" licenses and "Benjamin" permit.

15.  The "Benjamin" exploration permit granted PetroMed 18 months in which the Company could convert the permit into multiple licenses. In order to convert the permit to multiple licenses, PetroMed needed to (1) conduct 3D seismic studies; and (2) show technical proficiency. The "Benjamin" permit expires on January 20, 2009. Failure to convert the permit would result in the Company's 2D seismic data becoming public. Future licenses would be purchased on a first come basis.

16.  In September 2009, WesternGeco conducted a 2D seismic study of the

**PetroMed v. Bontan Complaint**
*(Page 4 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300



1  ocean floor in the areas covered by the "Mira" and "Sarah" licenses. The 2D study was
2  necessary for PetroMed to show progress on its "Sarah" and "Mira" licenses. The cost
3  of both the WesternGeco 2D and 3D seismic studies necessary for the "Sarah" and
4  "Mira" licenses and necessary to convert the "Benjamin" permit to five drilling licenses
5  was $13.5 million. In addition, the Ministry requires proof of $50 million financial
6  capability for each drilling license.

7  17.  In the best interests of its shareholders, the PetroMed board, with
8  shareholder approval, sought out a financially stable public company that would
9  exchange stock, future warrants, cash, and oil well royalties for PetroMed's "Mira" and
10 "Sarah" licenses and "Benjamin" permit. PetroMed sought-out a healthy company with
11 experience bringing petroleum projects to completion. PetroMed was further seeking to
12 ensure that any company who purchased its assets would be able to pay
13 WesternGeco $13.5 million for its 2D and 3D seismic studies and data analysis and
14 provide $350 million financing for the seven drilling licenses.

15 18.  In the summer of 2009, the PetroMed Board hired Howard Cooper and
16 his company, Three Crown, as a consultant to advance the project. After being
17 assured Cooper and Three Crown had the experience, financial resources, and
18 financial connections to ensure that the project could move forward PetroMed entered
19 into an Option to Purchase Agreement with Cooper and Three Crown on October 15,
20 2009.

21 19.  Cooper assured PetroMed that he had the funds to pay WesternGeco
22 and could swiftly raise the funds necessary to complete the deal. Cooper represented:
23 (1) he had "no problems with investors"; (2) Pine Tree Capital, a Canadian investment
24 firm, was a significant owner of Bontan and was very interested in the deal; (3) Cooper
25 claimed to have lined-up 3 or 4 of his regular investors (each with a net worth of over

**PetroMed v. Bontan Complaint**
*(Page 5 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300



1  $100 Million) who had already looked at the deal and were waiting to put money into it;
2  and (4) he claimed he had recruited a backup group of investors in New York City.

3  20. Cooper further assured PetroMed's Board of Directors that he had
4  arranged for the $13.5 million required to pay WesternGeco to be available within ten
5  (10) days after the parties closed the deal.

6  21. Cooper further represented that he would be the CEO of the public
7  company that agreed to purchase PetroMed's assets and would be on its Board of
8  Directors. Because Cooper would be running the public company and PetroMed
9  believed he had the financial resources to pay WesternGeco and start construction of
10 oil wells, PetroMed did not believe it needed to vet the public company through
11 references about the company's experience in the oil production industry.

12 22. Under the Option and Purchase Agreement, PetroMed gave Cooper and
13 his company the option to purchase PetroMed's 95.5% interest in the "Mira" and
14 "Sarah" licenses and "Benjamin" permit with the understanding that Cooper would
15 assign the option to a public company he recruited in exchange for PetroMed's
16 valuable assets.Petromed was to receive no less than 20% of the outstanding common
17 stock of the public company, future warrants, approximately $1 million in cash, and a
18 royalty on oil produced as a result of PetroMed's licenses and permit.

19 23. Shortly after the parties signed the Option and Purchase Agreement in
20 October of 2009, Cooper stated that he had found a suitable public company and
21 would be ready to close the transaction on November 18, 2009. PetroMed requested
22 financial and corporate structure information about the public company Cooper had
23 recruited, but Cooper refused to provide financial or corporate structure information.

24 24. Cooper also failed to provide PetroMed with information about who the
25 market makers were for the public company. PetroMed had no information about how

**PetroMed v. Bontan Complaint**
*(Page 6 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300


1  big the market was for the sale of the new company's stock so it could properly value
2  the stock.

3     25.  Then on November 14, 2009, Copper, Three Crown, and Bontan
4  informed PetroMed and its board of directors that his company, Three Crowns, would
5  own 22.5% owner share of the 95.5% rights to the "Mira" and "Sarah" licenses and
6  "Benjamin" permit and 2.5% would be owned by an anonymous investor.

7     26.  PetroMed's Board was alarmed by the changes and the fact that the
8  unknown public company's interest in the "Mira" and "Sarah" licenses and "Benjamin"
9  permit was to be diluted by twenty-five percent (25%) even before the final assignment
10 of PetroMed's assets was made. PetroMed's derivative interest in its oil project was
11 also diluted 25% more than the agreement with Three Crown provided. In response,
12 Cooper, assured PetroMed it would receive a 25% ownership interest in the public
13 company making up for the dilution.

14    27.  On November 16, 2009, PetroMed learned Bontan was the public
15 company that had agreed to purchase PetroMed's assets. Cooper provided PetroMed
16 with some last minute information about Bontan, but neither Bontan, Three Crown, nor
17 Cooper, disclosed the Cooper would not be involved in Bontan's leadership.

18    28.  The Option Agreement with Three Crown prevented PetroMed from
19 obtaining a backup financial partner. PetroMed lacked sufficient funds necessary to
20 pay WesternGeco for the 2D and 3D seismic study data and analysis. With the
21 January 20, 2010 deadline for conversion of the "Benjamin" permit fast approaching,
22 and no other investment partner lined-up, PetroMed believed it had no choice but to
23 close the transaction. If the deal did not close, Cooper and Three Crown could sue
24 PetroMed and make finding an alternative financial prior to January 20, 2010 next to
25 impossible.

**PetroMed v. Bontan Complaint**
*(Page 7 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300


29. The transaction closed on November 18, 2009. In exchange for its assignment of the "Mira" and "Sarah" licenses and "Benjamin" permit to Israel Petroleum Company (owned 75% by Bontan, 22.5% by Cooper and 2.5% by an unknown investor), PetroMed received: (1) stock certificate indicating it was the holder of 7,617,658 shares of Bontan common stock equal to greater than 20% ownership in Bontan; (2) PetroMed and the Israel Petroleum entered into an overriding royalty agreement granting PetroMed three percent (3%) of revenues from oil drilling; (3) $850,000.00 in cash; and 2.2 million warrants. The Israel Petroleum Company also agreed to an irrevocable assumption of all of PetroMed's liabilities and obligations.

30. In late November 2009, days after PetroMed assigned its "Mira" and "Sarah" leases and "Benjamin" permit to Israel Petroleum, Bontan's Board of Directors sent shareholders notice of an annual and special meeting. The Bontan Board of Directors selected a record date for voting of November 16, 2009, 2 days prior to PetroMed's record date of ownership of Bontan shares, so PetroMed could not vote at the meeting or through proxy.

31. In the notice of annual and special meeting, Bontan's board listed PetroMed's ownership interest in the Company as 17.83% not the 25% ownership stake in Bontan promised at the time the transaction closed.

32. Neither Bontan, Cooper nor Three Crown disclosed to Bontan that the Bontan shareholders would be voting on numerous crucial proposed resolutions, including (1) whether to grant directors the right to reverse common shares of Bontan stock such that one share would be issued in exchange for up to 15 old shares; and (2) whether directors should be given the unfettered power to create stock incentive programs bound only buy their discretion. If these proposed resolutions passed, PetroMed's ownership interest in Bontan would be diluted even more. If PetroMed had

**PetroMed v. Bontan Complaint**
*(Page 8 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300



1  known of the 15:1 reverse stock split, it would not have closed the transaction because
2  small public companies like Bontan rarely if ever can execute this maneuver
3  successfully and the stock trades at its historic price. PetroMed's would lose
4  approximately 95% of their value.

5      33.    Bontan has not publicly announced the result of the shareholder meeting
6  but since its insiders control the stock it is likely the resolutions passed.

7      34.    Despite the fact that Cooper stated he had arranged to have sufficient
8  investment funds within ten (10) days after the parties signed their agreements, he
9  failed to pay WesternGeco the $13.5 million owed for the 2D and 3D seismic studies
10 and data analysis by November 28, 2009. Instead he made a partial payment of $2
11 million.

12     35.    In an email dated January 13, 2010, Cooper admitted he did not have
13 the financial resources to pay WesternGeco.

14     36.    It is now clear that Cooper lacked the necessary financial resources and
15 backing when he closed the transaction with PetroMed on November 18, 2009. If
16 PetroMed had known this prior to closing, the transaction would not have closed.

17     37.    Despite numerous requests from PetroMed, both Cooper and Bontan
18 have continued to withhold: (1) financial information about Bontan and Israel
19 Petroleum; and (2) how the ownership interest in the licenses and permit is structured.

20     38.    PetroMed has also learned from Cooper that Three Crown borrowed $1
21 million to close its transaction with PetroMed. PetroMed's Board knows that it is a
22 death-knell for petroleum companies like Three Crown to borrow funds because they
23 have no income stream to service the debt. Borrowing funds is also an indication of a
24 lack of investor interest. If PetroMed had known Cooper use borrowed funds to close
25 his transaction with PetroMed, the Company would not have agreed to the transaction.

**PetroMed v. Bontan Complaint**
*(Page 9 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300



39. As of the date of this complaint, PetroMed stands to lose the Benjamin permit and WesternGeco is threatening to sell the 3D and 2D data.

## V. CLAIMS FOR RELIEF

### A. FEDERAL SECURITIES FRAUD UNDER SECTION 10B-5

40. Plaintiff realleges and incorporates paragraph 1-39.

41. Defendants Cooper, Three Crown and Bontan violated Section 10b-5 of the 1934 Securities Exchange Act by 1) making a misstatement or an omission of a material fact; (2) with reckless disregard for the truth thereof, and with the intent to deceive or defraud; (3) in connection with the purchase or the sale of a security; (4) by means of the mails or some other device or instrumentality of interstate commerce, or of any facility of any national securities exchange (5) upon which the plaintiff reasonably relied on the Defendants' misrepresentations and omissions and (6) that the plaintiff's reliance was the proximate cause of his or her injury.

42. **False Statements**: Defendants Bontan, Cooper and Three Crowns made the following false statements of material facts intending to deceive and entice Plaintiff PetroMed to assign its valuable:

    (a) Cooper had "no problem" recruiting the necessary investors to move the project forward and had investors available for the project;

    (b) Cooper had funding commitments to pay WesternGeco $13.5 million within 10 days of closing;

    (c) Cooper had commitments from investors representing $100 million to sufficient to begin well construction on the area covered by the "Mira" and "Sarah" licenses;

**PetroMed v. Bontan Complaint**
*(Page 10 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300

TOLLEFSENLAW

    (d) Pine Tree Capital was a significant shareholder of Bontan and had expressed great interest in the deal;

    (e) Cooper had lined-up three (3) or four (4) of his regular investors, each with a net worth of over $100 million, who had already looked at the deal and were waiting to put money into it;

    (f) Cooper had recruited a backup group of investors in New York City ready to invest in the deal if the others failed to invest;

    (g) Cooper would be the CEO of the public company that would purchase PetroMed's assets and he would be on the Board of Directors as well;

    (h) Cooper, Bontan and Three Crown assured Petromed that it would own a minimum of 20% of Bontan stock as a result of the transaction;

    (i) Cooper represented the public company would be traded on the Toronto Stock Exchange;

43. **Omissions**: The following are material omissions which were not disclosed to Plaintiff:

    (a) Defendants lacked the financial resources or investor commitments to pay WesternGeco $13.5 million for its 2D and 3D seismic studies data and analysis;

    (b) Three Tree had to borrowed $1 million to close the transaction with PetroMed;

    (c) Bontan planned a reverse stock split;

    (d) Bontan intended to make significant corporate changes that had the potential to further dilute Bontan's ownership interest;

    (e) PetroMed would only own 17.83% of Bontan upon closing;

    (f) Bontan's planned corporate structure using a subsidiary to own interests



in PetroMed's oil property;

(g) Cooper would not be part of Bontan's leadership; and

(h) The management team that would be responsible for making Bontan's stock valuable and their experience in the oil industry.

44. Through the above misrepresentations and omissions, Bontan, Cooper, and Three Crown intentionally misrepresented and withheld material information that deprived PetroMed of the true facts surrounding the Company's transaction with Bontan that would have led PetroMed and its Board of Directors to forego its transaction with Bontan, Israel Petroleum, Cooper, and Three Crown.

45. By their false statements and omissions, Defendants Cooper, Bontan, and Three Crown intended to knowingly deceive, manipulate, and defraud Plaintiff PetroMed into agreeing to assign its valuable "Mira" and "Sarah" licenses and "Benjamin" permit to Israel Petroleum.

46. In the alternative, Defendants Cooper, Bontan and Three Crown made misrepresentations or omissions of material fact with reckless disregard for the truth thereof, and with the intent to deceive or defraud.

47. Bontan, Cooper, and Three Crown made material omissions and misrepresentations through email and during telephone conferences across state and international borders.

48. Plaintiff PetroMed reasonably relied on Defendants false statements and omissions.

49. Plaintiff PetroMed's reasonable reliance proximately caused it to suffer damages.

50. Plaintiff PetroMed hereby tenders to Bontan the 7,617,658 shares PetroMed and $1 million received in exchange for assigning its ownership in the "Mira"



and "Sarah" licenses and "Benjamin" permit to Israel Petroleum.

B.  **FEDERAL SECURITIES FRAUD CLAIM UNDER SECTION 29(B) OF THE 1934 SECURITIES AND EXCHANGE ACT.**

51. Plaintiff realleges and incorporates paragraphs 1-50.

52. The contracts in this case involved a prohibited transactions, violations of 10(b)(5) of the Securities and Exchange Act of 1934.

53. Plaintiff PetroMed is in contractual privity with Defendants Cooper, Bontan and Three Crown.

54. Plaintiff PetroMed is a purchaser of securities, a class of persons the Securities and Exchange Act of 1934 was designed to protect.

55. As a party harmed under Section 29(b) of the Securities and Exchange Act, Plaintiff PetroMed is entitled to rescission of its contracts.

C.  **SECURITIES FRAUD UNDER THE WASHINGTON SECURITIES ACT**

56. Plaintiff realleges and incorporates paragraphs 1-55.

57. Defendants Cooper, Three Crown and Bontan induced Plaintiff PetroMed to agree to sell its 95.5% interest in the "Mira" and "Sarah" licenses and "Benjamin" permit to Israel Petroleum Company without full disclosure of all material facts in violation of the Washington Securities Act, RCW 21.20.430, and RCW 21.20.010.

58. Defendant Bontan, Three Crowns, and Cooper are primarily liable as sellers under RCW 20.21.430(1).

59. As provided by statute, Plaintiff PetroMed seeks rescission of its assignment of its 95.5% in the "Mira" and "Sarah" licenses and "Benjamin" permit to the Israel Petroleum Company.



### D. STATE COMMON LAW RESCISSION CLAIM

60. Plaintiff realleges and incorporates paragraphs 1-59.

61. Plaintiff PetroMed and Defendants Cooper and Bontan entered into an agreement whereby PetroMed assigned Cooper and Bontan its 95.5 interest in the "Mira" and "Sarah" licenses and "Benjamin" permit to the Israel Petroleum Company - owned 75% by Defendant Bontan and 22.5% by Cooper.

62. Defendants enticed PetroMed into assigning its interest to these valuable assets by fraudulent inducement and business compulsion.

63. Because there is no adequate remedy at law because real property is unique and Defendants do not have the ability to pay a judgment for the hundreds of millions in damages caused, PetroMed seeks rescission of its assignment of the "Mira" and "Sarah" licenses and "Benjamin" permit.

### E. FRAUD IN THE INDUCEMENT

64. Plaintiff realleges and incorporates paragraphs 1-63.

65. Plaintiff PetroMed was ignorant of the falsity of Defendants Cooper's and Bontan's factual representations.

66. Plaintiff PetroMed relied on the truth of Defendants representations when deciding to assign its 95.5% interest in the "Mira" and "Sarah" licenses and "Benjamin" permit to Israel Petroleum.

67. PetroMed justifiably relied on Defendants false representations.

68. PetroMed seeks a declaration the contracts with Defendants are void and the "Mira" and "Sarah" licenses and "Benjamin" permit remain property of Plaintiff.

### F. MONEY LAUNDERING

69. Plaintiff realleges and incorporates paragraphs 1- 68.

**PetroMed v. Bontan Complaint**
*(Page 14 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300



70. Defendants have committed a specified unlawful activity as defined by RCW 9A.83.010(7) and has conducted a financial transaction as defined by RCW 9A.83.010(1) and (2).

71. Plaintiff PetroMed seeks double damages under RCW 9A.83.020(5) and reasonable attorney fees and investigation costs.

### G. ALTERNATIVE THEORY: BREACH OF CONTRACT

72. Plaintiff realleges and incorporates paragraphs 1 – 71.

73. The Option and Purchase Agreement and related Agreements Plaintiff PetroMed and Cooper and Bontan for the purchase of PetroMed's 95.5% interest in the "Mira" and "Sarah" licenses and the "Benjamin" permit are valid and enforceable contracts.

74. Plaintiff performed their obligations under the contracts by making an assignment of its 95.5% interest in the "Mira" and "Sarah" licenses and "Benjamin" permit.

75. Defendants materially breached the Agreement by failing to perform their side of the contracts.

76. Plaintiffs have been damaged by Defendants' breach in excess of $500 million and are entitle to their costs and attorney's fees.

### H. STATE ECONOMIC DURESS/BUSINESS COMPULSION CLAIM

77. Plaintiff realleges and incorporates paragraphs 1 – 76.

78. Defendants Bontan, Three Crown, and Cooper applied immediate pressure on PetroMed when it dictated a change to the terms of PetroMed's agreement with Bontan a few days before PetroMed was to make the assignment to Israel Petroleum. Bontan, Three Crown, and Cooper dictated that Cooper and Three



1  Crown would receive 22.5% interest of the rights to the "Mira" and "Sarah" licenses and
2  "Benjamin" permit and an anonymous investor would receive the remaining 2.5%
3  interest. This last minute unilateral change in the terms of the agreement substantially
4  diluted Bontan's ownership interest in the licenses and permit, and as a result,
5  PetroMed's ownership interest in the same.

6      79.    PetroMed was vulnerable because it needed to sell its valuable assets to
7  a public company who had the financial resources to pay WesternGeco and show
8  financial viability to the Israeli Ministry of National Infrastructure before the expiration of
9  the "Benjamin" permit on January 20, 2010. Defendants increased PetroMed's
10 vulnerability by requiring that PetroMed not develop back-up financing.

11     80.    The near expiration of the "Benjamin" permit rendered any court action
12 by the victim, PetroMed, impractical and mandated a sole course of action for the
13 Company's survival: agree to the modified transaction.

14     81.    As a result of the economic distress/business compulsion PetroMed
15 seeks a declaration the contracts with Defendants are void and the "Mira" and "Sarah"
16 licenses and "Benjamin" permit remain property of Plaintiff.

### I.    CONSUMER PROTECTION VIOLATION

82. Plaintiffs restate and incorporate paragraphs 1 - 76.

83. Defendants Bontan, Three Crown, and Cooper engaged in an unfair or deceptive acts or practices by providing false information to PetroMed regarding PetroMed's sale of its 95.5% interest in the "Mira" and "Sarah" licenses and the "Benjamin" permit and omitting material facts.

84. Defendants Bontan's, Three Crown's, and Cooper's unfair or deceptive acts occurred in trade or commerce.

**PetroMed v. Bontan Complaint**
*(Page 16 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300



85. Defendants Bontan's, Three Crown's, and Copper's unfair and deceptive acts had an impact on the public interest and have the possibility of repetition.

86. Defendants Bontan's, Three Crown's, and Copper's actions caused harm to Plaintiff PetroMed's business and property.

87. Defendants Bontan's, Three Crown's, and Copper's false, unfair, and deceptive acts were the proximate cause of damages to Plaintiff PetroMed's business and property.

88. Plaintiff PetroMed has been damaged in an amount in excess of $500 million. Plaintiffs are entitled to the statutory penalty of $25,000 plus costs and attorney fees.

### J.   NEGLIGENT MISREPRESENTATION

89. Plaintiff restates and incorporates paragraphs 1 – 83.

90. Plaintiff PetroMed alleges Defendants' misrepresentations were negligent.

91. Plaintiff has been damaged in an amount in excess of $500 million.

### VI.   PRAYER FOR RELIEF

Plaintiff PetroMed seeks the following relief:

A. Rescission of Plaintiff PetroMed's assignment of its 95.5% ownership interest in the "Mira" and "Sarah" licenses and "Benjamin" permit to Israel Petroleum;

B. Money damages of greater than $500 million;

C. Statutory penalty under Washington Consumer Protection Act of $25,000.00.

D. Declaration the contracts with Defendants are null and void;

**PetroMed v. Bontan Complaint**
*(Page 17 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300



E. Reasonable attorney fees;

F. Costs of this litigation, including reimbursement for deposition fees, expert witness fees, travel expenses, and other expenses to collect and produce evidence in this matter.

I. Such other relief as is equitable and just.

Dated this January 18, 2010.

                                        Tollefsen Law PLLC

*/s/ John Tollefsen*

                            John J. Tollefsen WSBA #13214
                            Frank S. Homsher WSBA # 26935
                                 *Of Attorneys for Plaintiff*

**PetroMed v. Bontan Complaint**
*(Page 18 of 18)*

Tollefsen Law PLLC
18225 8th Place West, Lynnwood,
WA 98037-4901
Phone/Fax: 425 673 0300

